Green, J.
delivered the opinion of the court.
A bill was filed by William Crockett, against Thomas Claiborne and others, in the circuit court of Robertson county, at the October Term, 1821, alledging that John Brooks had sold the tract of land in controversy to James G. Hicks, and had given his bond for the title, and that Hicks had executed his notes for the purchase money.
The bill alledged further, that Hicks had transferred the title bond to Claiborne, who had obtained a deed for the land, but that he knew at the time he received said deed,' that the purchase money had not been paid by Hicks.
The bill further alledged, that Brooks had assigned one of the notes executed by Hicks for the purchase money of the land to Crockett the complainant; that it remained unpaid; that "Hicks was insolvent, and that by virtue of said assignment the vendor’s lien was transferred to h.m; and he there *610 fore prayed a decree, subjecting the land to sale in satisfaction of the said note, due from Hicks.
The cause was transferred from the circuit court of Robertson county, to the chancery court at Charlotte; and at the June Term, 1828, of that court, a decree was pronounced in favor of the complainant, ordering said land to be sold.
On the 8th day of December, 1828, a copy of the record was made out and presented to Judge Whyte, one of the Judges of the supreme court, with a petition for writs of error and supersedeas; and on the same day, the said writs were ordered by the Judge, the record filed with the clerk, and bond and security given as required by law. No writ of supersedeas was actually issued and served on the clerk and master of the chancery court, and he proceeded in execution of the decree, and sold the land on 13th December, 1828, to the defendant Samuel Crockett.
At the December Term, 1828, of the chancery court, the report of the sale by the clerk and master was confirmed by the court, and he was ordered to make a deed to the purchaser, which deed was executed on the 4th day of February, 1829. The cause was continued in the supreme court until 1832, when it was heard, and the decree of the chancery court was reversed and the bill dismissed.
The present bill is brought by Claiborne, to remove the cloud which, the proceedings of the chancery court create upon his title, and to divest out of defendants, all the title and interest acquired by them, by virtue of said proceedings.
We think that the cause was in this court on the 8th of December, 1828, and that the writ of error operated, by virtue of the fiat of the judge, as a supersedeas although no writ of supersedeas was served upon the clerk of the chancery court.
The act of 1811, c 72, § 12, provides that a writ of error prosecuted in the supreme court, “shall not operate as a supersedeas, unless the party suing out the same, shall first obtain from one of the judges of said court, an order for a supersedeas,” &c.
This is substantially the phraseology of the statute 3 Jac. 1, c 8, which Lord Ellenborough, in Sampson vs. Brown, 2 East, 439, says, rendered it unnecessary to sue out the su- *611 persedeas; for that statute, said his lordship, says that “no execution shall be stayed upon or by any writ of error or supersedeas thereupon to be sued,” &c, unless, &c., which shows that a writ of error allowed, or a lorit of supersedeas, would have had the effect of staying execution.” See also Miller vs. Newbald, 1 East, 661.
If this be so, the sale of the land made by the clerk of the chancery court, on the 13th of December, five days after the writs of error and supersedeas had been allowed, was without authority and is void.
But if the clerk had possessed authority to make the sale on the 13th of December, no title was vested in the purchaser until the sale was confirmed by the court, and the deed was made. But the deed was not made until the 4th of February, 1829, after the session of this court, in which the case was pending, had commenced. Indeed it may be doubted whether the deed of the clerk and master could vest the legal title to the land in the bargainee. By the act of 1801, c 6, § 48, the court is authorised, by its decree, to divest the title out of the person against whom the decree may be made, without a conveyance from the party.
The practice before that act had been, to decree that the party having the legal title should make a deed as directed in the decree; but since that act, the practice is, to divest the right by the decree; and a copy of such decree must be registered, as the title of the party in favor of whom it is made. In this case, the decree does not purport to divest the title, but simply confirms the sale, and orders the clerk to make a deed. We do not say that a decree might not be expressed in such terms as to divest the title, and by virtue of the deed of the clerk, vest it in the purchaser; but it is extremely questionable whether the mere direction to the clerk to make a deed, would have that effect.
We think that upon any, or ail of these grounds, the defendants acquired no interest in the land in controversy, by reason of the sale and conveyance before mentioned.
2. But it is insisted that Claiborne has not the legal title to this land, and that before the court will decree, that in *612 shall be rested in him, it ought to require, that he pay the purchase money which is yet unpaid.
If the fact were as the counsel in argument assumed it to be, and the proper parties were before the courtj the consequence for which he contended would certainly follow. But the defendant, William Crockett, in his bill in the original case, alledged that Claiborne bad the legal title vested in him, and as we have not the power of attorney before us, and cannot therefore tell whether it is well proved or not, we must take that admission and statement, for the purposes of this decree to be true.
In the view which we have taken of the case, we take from the defendants no title they may have; nor do we vest any in the complainant. So far, therefore, as the decree of the chancellor vests title in the complainant, it must be reversed; and a decree will be entered declaring the proceedings under the decree in the chancery court, after the 8th of December, 1828, to be void; and divesting out of defendant all right and title acquired by said proceedings, and directing an account for the profits, &c.